Argued January 15, decided February 4, 1908.

## SMITH v. SMITH.

[93 Pac. 449.]

DEEDS—EXECUTION—PROOF—SUFFICIENCY.

Where a defendant who claims land under an unattested and unacknowledged deed containing unexplained erasures, said to have been executed by his father, did not disclose his claim until more than a year after his father's death, and in the meantime permitted the land to be treated as belonging to his father's estate, and allowed the executors to discharge a mortgage, taxes, etc., thereon, his explanation that he did not know that attestation or acknowledgment was necessary, and that he did not disclose the deed to his father's executors because "it was none of their business," was insufficient; there being no claim that his father, an experienced business man, did not understand the necessity of having the deed witnessed and acknowledged, and no explanation of a circumstance tending to dispute defendant's assertion that the deed was signed when it was prepared.

From Multnomah: MELVIN C. GEORGE, Judge.

This is a suit by William C. Smith against Benjamin F. Smith, involving the title to two lots in block 21, Highland, Multnomah County, Oregon. The defendant claims to be the sole owner, by virtue of a deed purporting to have been executed on the 21st day of May, 1901, by H. A. Smith and wife, which deed is neither witnessed nor acknowledged, and contains unexplained erasures. From a decree in favor of defendant, plaintiff appeals.

REVERSED.

For the appellant there was a brief with oral arguments by *Mr. James T. Lawler* and *Mr. Edward T. Taggart.*

For the respondent there was a brief with oral arguments by *Mr. Hayward H. Riddell* and *Mr. Enoch B. Dufur.*

MR. CHIEF JUSTICE BEAN delivered the opinion.

This is a controversy between the heirs of H. A. Smith, deceased, concerning the title to the home property of their father, being lots 7 and 8, block 21, Highland, Multnomah County. The defendant B. F. Smith claims to be the sole owner thereof, by virtue of a deed executed to him by his father about a year prior to

his death. H. A. Smith died on the 18th of May, 1902, leaving a will executed on the same day, by which he bequeathed to his wife $5,000 insurance on his life, subject to the payment of a $1,200 mortgage "upon my house, lots seven and eight, block twenty-one, Highland, Multnomah County, Oregon," and gave to his son B. F. Smith $1,000 in cash, and use of "my home place," and $200 a year for the care and maintenance of the testator's wife during her life; and devised and bequeathed all the rest and residue of his property to his four children in equal shares. Mrs. Smith, his widow, died a short time after her husband's death. At the time of his father's death, and for some time prior thereto, B. F. Smith and family were living in the house on the property in controversy, and continued to so reside during the administration of the estate. H. A. Smith's will was admitted to probate a few days after his death, and the executors nominated by him appointed. They included the property in controversy in the inventory of the estate, with the knowledge and without objection or protest from B. F. Smith, and afterwards paid the mortgage thereon from funds belonging to the estate, and taxes, insurance, and street assessments. On October 4, 1902, they applied to the county court for an order for the sale of real estate, including the property in controversy, for the payment of debts and expenses of administration, and defendant B. F. Smith admitted service of citation on the matter of such petition, and expressly consented in writing to the order of sale. The order was made, but the funds from other sources were sufficient to meet the expenses of administration and debts of the estate, without the sale of the home place. About the time this fact was ascertained, and more than a year after his father's death, B. F. Smith first asserted title to the property and disclosed the existence of the deed, under which he now claims. This deed purports to have been executed

by H. A. Smith and wife on the 21st of May, 1901, about
a year prior to the execution of a will asserting title
and disposing of the same property. It is neither wit-
nessed nor acknowledged, and, according to defendant's
testimony, was prepared by him and signed by his
father and mother, delivered to him, and was in his
possession for more than a year after the death of his
father before it was disclosed to the executors or any
other person. In the meantime the property had been
considered and treated by all parties, with his knowl-
edge and without objection from him, as belonging to
his father's estate, and had been listed and appraised
as such. The executors had paid the mortgage, taxes,
insurance, and assessments with his knowledge and
acquiescence, and without the slightest idea that he had
or claimed any interest in the property, other than as
an heir.

Now, these circumstances, while not conclusive against
him, are such as to occasion grave doubts as to the
validity of his asserted title, and call upon him for clear
and convincing proof thereof, and this, in our opinion,
he has not satisfactorily given. He explains the irregu-
larity in the execution of the deed by saying that he
did not know that a deed should be witnessed or
acknowledged, and his failure to advise the executors
of its existence was because it was none of their busi-
ness. He does not claim, however, that his father, whom
the record shows to have been a man of large business
experience, did not understand the proper manner of
executing deeds conveying real property, and it is hardly
probable that he would have executed an instrument
intending to convey his home place to his son, without
having it witnessed and acknowledged.

Again, it is asserted by defendant that the deed was
signed by the grantors at the time it was prepared,
but the instrument in evidence shows that the signa-

51 OR.—— 2

tures of the grantors are in a different ink from that used in writing the body of the deed, and there is no attempted explanation of this challenging circumstance. And, finally, an inspection of the deed itself raised a suspicion as to its genuineness. A printed form was used for making the deed. In the space designed for the description of the property three or four lines of writing appear to have been erased, and the description of the property in controversy or part thereof written over the erased portion. The nature of the writing erased cannot be determined definitely, but the fact of an erasure can admit of no doubt. The defendant offered no explanation of any of these discrediting facts, and while some of the points were not made by plaintiff in the court below, and probably cannot be urged here as an objection to the admission of the instrument in evidence, they are pertinent and must be considered on the question of the genuineness of such instrument, which is an important, if not the controlling, fact in the case. We do not undertake to adopt any theory as to how the deed came to be in its present form, nor is it necessary for us to do so. It is enough that, without a satisfactory explanation of the matters alluded to, the instrument cannot be accepted as a conveyance of the property in controversy from H. A. Smith to the defendant, and given precedence over the will of the alleged grantors of a later date.

It follows, therefore, that the decree of the court below should be reversed, and it is so ordered.

REVERSED.